UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RETAIL SERVICE SYSTEMS, INC.,

    Plaintiff,

v.

MATTRESS CLEARANCE CENTERS OF
AMERICA, LLC, *et al.*,

    Defendants.

Case No. 2:17-cv-746
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, to Transfer. (ECF Nos. 15, 29.)[1] For the reasons that follow, Defendants' Motions are **DENIED**.

### I.

This lawsuit alleges misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act, O.R.C. § 1333.61; successor liability; and civil conspiracy. Plaintiff seeks damages, royalties, punitive or exemplary damages, interest, attorneys' fees and costs. Defendants have moved to dismiss this lawsuit for lack of personal jurisdiction, and alternatively, to transfer the action to the United States District Court for the Western District of Virginia.[2]

---

[1] In its Motion to Dismiss, or in the Alternative, to Transfer (ECF No. 29-1), Defendant Mattress Clearance Centers of America ("MCCOA (NV)") adopts and incorporates the legal arguments and authorities advanced by Defendants Mattress Clearance Centers of America, LLC ("MCCOA (VA)") and Corey Bauer in their Motion to Dismiss, or in the Alternative, to Transfer (ECF No. 15-1).

[2] Defendant MCCOA (VA) filed a declaratory judgment action in a Virginia state court, but did not serve a copy of the summons and complaint on RSS until after RSS filed the misappropriation action in this Court. RSS removed the declaratory judgment action to the United States District Court for the Western District of Virginia. RSS then moved to dismiss that action for failure to state a claim for declaratory relief, and alternatively, for being filed in

Plaintiff, Retail Service Systems, Inc. ("RSS") is an Ohio corporation based in Dublin, Ohio. RSS operates a retail mattress and furniture business through which it licenses and franchises a proprietary marketing system to dealers across throughout the country. (Compl. ¶¶ 2, 9; ECF No. 1.) RSS purchased the intellectual property rights to its particular marketing system in June 2013 through an asset purchase agreement with Power Marketing Direct, Inc. ("PMD").[3] (*Id.* ¶ 16.) RSS asserts that Defendants Corey Bauer ("Defendant" or "Bauer"), and two companies named Mattress Clearance Centers of America, LLC (one a Nevada limited liability company ("MCCOA (NV)"), and one a Virginia limited liability company ("MCCOA (VA)") (collectively, "Defendants") have misappropriated the trade secrets of RSS's proprietary system, and are subject to jurisdiction in Ohio. (*Id.* ¶¶ 10, 11.) According to RSS in the Complaint,

> Over the course of several years, through trial and error, and with a sizable investment of resources, [the PMD Entities] developed a unique and comprehensive program for establishing, marketing and merchandising mattresses and then furniture via a unique "appointment only" system. The PMD Entities licensed and/or franchised "dealers" to purchase mattresses and furniture exclusively through them. Further, the PMD Entities trained these dealers to market and sell those products through unique, non-traditional, retail-type stores

---

anticipation of a substantive suit being brought in another forum. Judge Urbanski held a hearing on the motion on January 26, 2018, and subsequently granted the motion, finding that the balance of convenience does not weigh in favor of that forum, and that Fourth Circuit precedent precluded the action as an attempt at impermissible forum shopping. (*See Opinion*, ECF No. 33-1, p. 7.)

[3] Two related cases were filed previously by RSS: *Retail Service Systems, Inc., v. Carolina Bedding Direct, LLC, et al.*, Case No. 2:13-cv-00994 ("first federal case"), and *Retail Service Systems, Inc., v. Mattress by Appointment, LLC, et al.*, Case No. 2:15-cv-2769 ("second federal case"). (Compl., ECF No. 1, ¶¶ 24- 25.) In the first federal case, this Court granted RSS's motion for default judgment, and further granted RSS a permanent injunction, enjoining Carolina Bedding (NC) from the use of RSS's trade secrets and proprietary materials. (*Id.*, ECF No. 1-4, *Order*, Smith, J.) In both cases, one of the defendants was Darren Conrad, a former Senior Manager at PMD. RSS avers that Bauer was a Senior Manager of Carolina Bedding, working with Conrad at the time the first federal case was filed, and "had actual knowledge of both Mr. Conrad's misappropriation of the RSS system and of RSS's efforts to seek all legal remedies associated with that misappropriation." (*Id.* at ¶ 26.)

2

> using the PMD Entities' proprietary marketing, merchandising, and selling program that had been developed by PMD over time, utilizing PMD's extensive marketing and sales experience. The PMD process was a unique appointment-centric business model allowing mattress and furniture dealers to own and operate a business far less expensively and with far better selling results than what is known or generally available in traditional mattress or furniture retail locations.
>
> . . . [The] proprietary program involves a unique by-appointment-only business with a much higher success rate than a typical retail start-up business. It combines scripted, low-cost advertising techniques; scripted and planned telephone conversations; and in-person merchandising and selling methodologies for selling mattresses and furniture by appointment. [The] program also includes a step-by-step trackable management process for measuring and developing licensed and/or franchised dealers.

(*Id.* ¶¶ 15, 17.)

RSS asserts that Bauer is a Virginia citizen and the sole owner and operator of MCCOA (NV) and MCCOA (VA). (*Id.* ¶ 12.) RSS further alleges that Defendants have contracted with approximately 35 dealers all over the country, including one or more dealers in Ohio, and trained such dealers with Plaintiff's trade secrets. (*Id.* ¶ 8.)

Bauer asserts that he formed MCCOA (NV) in May of 2015, and was the sole owner, manager and member of the company. He asserts that he sold all of the property of MCCOA (NV) to Kathleen Bauer (his mother) after only three months, and the company became defunct in August 2015. (Def.'s Mot., ECF No. 29-1, p. 1.) He states that MCCOA (NV) did not make any sales to dealers whose territory covered any area in Ohio, and did not contract with any dealers located in Ohio. (C. Bauer Decl., ECF No. 19-2, ¶ 6.) However, he did place a Craigslist ad for a dealer in the Richmond, Indiana area, to which Steve Smith responded in August 2015. (*Id.* at ¶ 8.) Bauer asserts that he passed this information to Kathleen Bauer, of MCCOA (VA) and MCCOA (VA) contracted with Mr. Smith. (*Id.* at ¶ 10.) In lieu of a third-party deposition of Mr. Smith, during a telephone conference with the Court the parties stipulated to two facts regarding Mr. Smith:

1. Mr. Steve Smith, who owns and manages two Mattress Clearance Centers of America locations in Indiana, advertises to customers in Ohio; and

2. Mr. Smith's sales to Ohio customers comprise 10% to 30% of his total sales.

(*Order*, ECF No. 26.)

Defendants assert that, as an initial matter, RSS has conflated Corey Bauer and MCCOA (VA), and that Bauer has no ownership interest in this company and "never has." (Def.'s Reply, ECF No. 25, at p. 3.) Bauer states that Kathleen Bauer formed MCCOA (VA) through the asset purchase of MCCOA (NV), and he "previously served as an independent dealer [for MCCOA (VA)] in Virginia." (*Id.*) Ms. Bauer states that MCCOA (VA) had a dealer in Ohio, but has not had any dealers in Ohio since December of 2016. (K. Bauer Decl., ECF No. 15-2, ¶ 39.) However, she states that MCCOA (VA) did purchase bed frames from a company in Ohio for delivery directly to MCCOA (VA)'s dealers through March, 2017. (*Id.* at ¶ 36.)

RSS asserts that Bauer's misappropriations have their genesis in his association with Darren Conrad, a defendant in the first federal case and the second federal case, who had previously worked for PMD. (Pl.'s Mem. in Opp. To Mot. to Dismiss ("Pl.'s Mem.") at 1; ECF No. 24.) Conrad opened several businesses using the RSS system, including Carolina Bedding Direct, LLC ("Carolina Bedding"). Conrad hired Bauer to be a manager of Carolina Bedding. (Conrad Decl., ECF No. 24-2, ¶¶ 2-3.) At Carolina Bedding, Conrad trained Bauer on the PMD (now RSS) proprietary system. (*Id.* at ¶¶ 4-5.) Bauer was aware of a lawsuit previously filed against Conrad for the use of PMD's trade secrets. (*Id.* at ¶ 8.) In March of 2013, Bauer became a senior voting manager with Carolina Bedding, was aware of RSS's suit claiming Carolina Bedding had misappropriated RSS's trade secrets, and was privy to the highest level of Carolina Bedding's information and legal strategy. (*Id.* at ¶¶ 11-15.) Conrad then opened another appointment-based mattress company, Mattress Direct, LLC, and he recruited Bauer to be vice

4

president of market development for that company. (*Id.* at ¶ 16.) In February, 2015, Bauer pulled together various recruiting and training materials from Carolina Bedding – including the trade secrets at issue in the case at bar – and attached them to an email sent to Conrad. (*Id.* at ¶ 17.) Three months later, Bauer opened MCCOA (NV). (Pl.'s Mem. at 2; ECF No. 24.)

According to Mr. Scott Andrew, President and Chief Executive of RSS, in June of 2017, RSS received an inquiry from one of RSS's dealers about a location near his that appeared to be operating using their business model. (Andrew Decl., ECF No. 24-1, ¶ 5.) Mr. Andrew asked his Chief Marketing Officer, Mr. Darren Conrad, to look into it immediately.[4] The research discovered "approximately 36 locations operating under the banner of [MCCOA]." (*Id.* at ¶ 7.) "Based on RSS's research, MCCOA has trained approximately three dozen dealers on the RSS System, with past or present dealers located in, among other states, Michigan, Indiana, Ohio, Pennsylvania, and Kentucky." (*Id.* at ¶ 9.)

II.

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal when a court lacks personal jurisdiction over a defendant. In considering a motion to dismiss for lack of personal jurisdiction, district courts have discretion to either decide the motion on the pleadings alone, permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). Here, the record is sufficiently developed that the Court can decide Defendants' Motion to Dismiss without a hearing.

Plaintiff bears the burden of establishing personal jurisdiction. *Estate of Thomson v.*

---

[4] RSS's website currently lists Mr. Darren Conrad as Executive Vice President and Chief Marketing Officer of RSS.

5

*Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)). Where a Rule 12(b)(2) motion is decided solely on written submissions, the plaintiff's burden is "relatively slight"; the court must view all of the pleadings and affidavits in a light most favorable to the plaintiff, and to defeat dismissal, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Shaker Constr. Grp. LLC, v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *1 (S.D. Ohio Sept. 18, 2008). Indeed, as the Sixth Circuit has explained, a court disposing of a 12(b)(2) motion "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459. The Sixth Circuit has adopted that approach "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Id*.

The Court may have general or specific jurisdiction over a defendant. Specific jurisdiction exists "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Coast to Coast Health Care Servs., Inc. v. Meyerhoffer*, S.D. Ohio No. 2:10-cv-734, 2011 WL 2442656, *2 (June 14, 2011) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)). On the other hand, general jurisdiction exists "when a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Id*. at *2 (quotation omitted).

Federal courts apply the law of the forum state when deciding whether personal jurisdiction exists over a defendant. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Thus, to find that it has personal jurisdiction over Defendants, the Court must determine first whether Defendants' actions meet the criteria of Ohio's long-arm statute, O.R.C.

§ 2307.382, and second, that the Court's jurisdictional exercise comports with the due process requirements of the United States Constitution. *CompuServe, Inc.*, 89 F.3d at 1262. Here, the Court finds that both requirements are satisfied as to Defendants.

## III.

### A.     Ohio's Long-Arm Statute

Ohio's long-arm statute allows Ohio courts to exercise personal jurisdiction over out-of-state defendants on claims arising from nine specific situations. O.R.C. § 2307.382(A). Plaintiff argues that the court has personal jurisdiction over Defendants under § 2307.382(A)(1)–(4) and (6), which provide that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's":

- (1) Transacting any business in this state,
- (2) Contracting to supply services or goods in this state,
- (3) Causing tortious injury by an act or omission in this state,
- (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state, . . . or
- (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

(Pl.'s Mem. at 2; ECF No. 24.) A finding that Defendants have transacted business in Ohio or acted consistently with any one of the above factors would be sufficient to assert personal jurisdiction. *See Ky. Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 75 (1990), 599 N.E.2d 477, 480 (Ohio 1990); *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236 (1994), 638 N.E.2d 541, 544-45 (Ohio 1994). The Court finds that, at a minimum, Plaintiff has met the first, fourth, and sixth provisions of Ohio's long-arm statute, as discussed below.

### 1. Subsection 1: Defendants Transacted Business in Ohio

Defendants assert that there is no evidence they transacted any business in Ohio.

7

Specifically, they assert that "a claim for an alleged theft of trade secrets cannot be said to be 'a cause of action arising from' a sale of mattresses into Ohio." (Def. Mot., ECF No. 15-1, p. 7.) With respect to subsections (1) through (3) of the Ohio long-arm statute, Defendants assert that "Plaintiff does not allege that this alleged theft occurred in Ohio, was somehow directed at Ohio, or otherwise involved Ohio in any way." (*Id.* at p. 6.)

RSS, on the other hand, asserts that in May of 2015, just three months after sending Conrad the email with the trade secrets, Bauer registered MCCOA (NV), and three months after that, Bauer's mother, Kathleen Bauer, registered MCCOA (VA), and these defendants, by and through Bauer, "recruited and trained approximately three dozen dealers to sell mattresses using the RSS system." (Pl.'s Mem., ECF No. 24, p. 3.) RSS asserts that Defendants' Ohio dealer operated from January through November 2016, and "purchased nearly $50,000 in mattresses and related products from Defendants during that time." (*Id.*) The Ohio dealer was given "the exclusive right to sell mattresses within a 40-mile radius surrounding the dealer's location – a total area covering more than 5,000 square miles, all within Ohio." (*Id.*) Additionally, Defendants "have contracted with at least three other locations (and two separate dealers) outside of Ohio but with 40-mile radius territories covering portions of Ohio." (*Id.* at pp. 3-4.) Mr. Steve Smith, Defendants' dealer with locations in Muncie and Richmond, Indiana, specifically advertises to customers in Ohio, and estimates Ohio represents 10 to 30% of his total sales. (Pl.'s Mem., ECF No. 24, at p. 4; *Order*, ECF No. 26.) RSS calculates that, since becoming a dealer in September 2015, Mr. Smith has obtained as much as $178,000 in revenue from sales to Ohio customers. (*Id.*)

The Ohio Supreme Court has held that "transact" means "'to prosecute negotiations; to carry on business; to have dealings'"; even if the defendant has never visited the state. *Ky. Oaks*

*Mall Co.*, 559 N.E.2d at 480 (Ohio 1990) (emphasis omitted) (quoting *Black's Law Dictionary* 1341 (5th ed. 1979)); *see also Goldstein*, 638 N.E.2d at 544 (Ohio 1994). "Transact" is a "'broader term than the word "contract" and may involve business negotiations which have been either wholly or partly brought to a conclusion.'" *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006) (quoting *Ky. Oaks Mall Co.*, 559 N.E.2d at 480).

RSS asserts that the claims of misappropriation of trade secrets are "not limited to the discrete, singular act constituting the 'theft' of the trade secrets. Rather, Defendants' historical and on-going disclosure and use of Plaintiff's trade secrets constitutes misappropriation." (Pl.'s Mem., ECF No. 24, p. 9.) In support, Plaintiff cites to O.R.C. § 1336.61(B)(2), which defines "misappropriation" for the purposes of the Ohio Trade Secrets Act to include "[d]isclosure or use of a trade secret of another" where, among other things, "at the time of the disclosure or use" the person "knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." (*Id.*) Thus, RSS asserts that Defendants' misappropriation of the trade secrets did not only occur when Bauer "stole the trade secrets through his prior employment with Carolina Bedding, it continued through the period when such trade secrets were disclosed to and used with MCCOA's Ohio dealer throughout 2016." (*Id.*) RSS asserts that, "[i]n short, Plaintiff's misappropriation of trade secrets claims 'arise[] from' Defendant MCCOA's transacting business in Ohio, because MCCOA's business activities in Ohio use Plaintiff's trade secrets." (*Id.*)

RSS further asserts in its Complaint that:

9

> [i]t is undisputed that Defendant MCCOA had an Ohio dealer for almost the entirety of 2016. Ex. 3, at Response to Interrogatory No. 3. It is also undisputed that MCCOA continues to have dealers outside of Ohio, whose exclusive sales territory encompasses parts of Ohio. *Id.* at Response to Interrogatory Nos. 5-6; see also Ex. 5. It is also undisputed that through these dealers (both past and present), MCCOA sold mattresses into Ohio directly to its Ohio dealer and indirectly through its dealers outside of Ohio but with Ohio territories. *Id.* at Responses to Interrogatories 3-6. Finally, it is undisputed that MCCOA purchased product from an Ohio supplier. Ex. A to Defendants' Motion to Dismiss, Declaration of Kathleen Bauer, at ¶ 36. Such activities undoubtedly constitute "transacting business" in Ohio.

(*Id.* at p. 8.)

To satisfy Ohio's long-arm statute, defendants must not only have "transacted any business in the state," but there must also exist a sufficient nexus between defendants' business dealings in Ohio and the matters at issue in this case. *ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D. Ohio 1999). RSS asserts that Defendants have "substantial connections to Ohio." (Def.'s Mem., ECF No. 24, p. 3.) RSS claims that Defendants continued to knowingly and intentionally misappropriate RSS's trade secrets from 2015 to the present. According to RSS, Defendants are benefitting from the proprietary system originally developed by PMD (now owned by RSS), which involves "scripted, low-cost advertising techniques; . . . in-person merchandising and selling methodologies for selling mattresses and furniture by appointment," and "a step-by-step trackable management process for measuring and developing licensed and/or franchised dealers." (Compl. ¶ 17; ECF No. 1) RSS contends that defendants' business transactions in Ohio—training and maintaining an Ohio dealer and dealers with exclusive territories in Ohio—rely on the marketing materials and management tools developed by PMD, and therefore a sufficient nexus exists between defendants' activities and the cause of action. (Pl.'s Mem., ECF No. 24, at p. 4.) Construing the record before it in the light most favorable to the Plaintiff, the Complaint sufficiently alleges that Defendants used the proprietary system in

transacting business in Ohio.

## 2. Subsection 4: Defendants Caused Tortious Injury in this State by an Act or Omission Outside the State

The fourth subsection of Ohio's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's ... causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.R.C. § 2307.382(A)(4).

Defendants assert that, "with respect to subsection (4) of Ohio's long-arm statute, mere allegations that a defendant has a distributor in a state are not sufficient to sustain a finding that a defendant has engaged in a 'persistent course of conduct' justifying the exercise of personal jurisdiction. (Def.'s Mot., ECF No. 15-1, at p. 7.) RSS counters that Defendants have caused tortious injury through the disclosure and use of Plaintiff's trade secrets with the Ohio dealer, with the dealers outside of Ohio who service Ohio, through their persistent course of conduct in Ohio, and through deriving substantial revenue from goods used or consumed in Ohio. (Pl.'s Mem., ECF No. 24, pp. 10-11.)

"Persistent course of conduct" means any conduct that is continuous and not just sporadic; it contemplates a quality of contacts in Ohio different from those involved in doing business in Ohio. *Jackson v. State St. Bank & Tr. Co.*, 110 Ohio App. 3d 388, 395-96 (2d Dist. 1996). Direct contact with Ohio is not required. In *Dayton Superior Corp. v. Gen. Technologies, Inc.*, Case No. 3:09-cv-00114, 2009 WL 4250034, *4 (S.D. Ohio 2009), the Court considered this provision in a patent infringement case, and determined that a *prima facie* showing was established where the complaint alleged that defendant sold infringing products to

third-party distributors, who in turn re-sold the products in Ohio. Similarly in this case, it is undisputed that Defendants have established a network of distributors, some of whom operate in Ohio. *See Busch v. Serv. Plastics, Inc.* 261 F.Supp. 136, 141 (N.D. Ohio 1966) ("[P]roof of a persistent course of conduct might be satisfied by a showing that the nonresident or foreign corporation continuously and not sporadically relied on and benefited from one or more independent sales or service representatives operating in Ohio.")

Plaintiff has alleged that Defendants sold their products through the disclosure and use of Plaintiff's trade secrets to a dealer in Ohio, and to dealers outside of Ohio whose exclusive sales territory includes Ohio. Plaintiff has further alleged that Defendants regularly and continuously purchased product from an Ohio business, sufficient to support a finding that Defendants engaged in a persistent course of conduct with Ohio. In construing the record in favor of RSS, the Court concludes that it has specific personal jurisdiction over Defendants. The complaint sufficiently alleges that Defendants committed tortious acts within Ohio and acts outside Ohio that caused injury within the state. RSS has also made a *prima facie* showing that Defendants have transacted business in Ohio by contracting with dealers to sell mattresses and bedframes in Ohio, and engaged in a persistent course of conduct, conducting business activities using the trade secrets of an Ohio company. Thus, the requirements of Ohio's long arm statute are satisfied.

### 3. Subsection 6: Defendants Caused Tortious Injury in Ohio by an Act Outside of Ohio when they Might Reasonably Expect Some that Some Person Would be Injured in Ohio

The sixth subsection of Ohio's long-arm statute addresses anyone who causes "tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in

12

this state." O.R.C. § 2307.382(A)(6).

Defendants do not specifically address this subsection. As discussed in detail above, RSS alleges that Defendants misappropriated the trade secrets of an Ohio company, outside of Ohio, and that the use of these trade secrets has injured Plaintiff in Ohio. (Compl. ¶ 36, ECF No. 1.) RSS alleges that Defendants knew that Plaintiff's trade secrets were obtained improperly from Plaintiff. (*Id.* at ¶¶ 28-29, 43.) Further, RSS alleges that Defendants were informed that their use of these trade secrets was improper, and Defendants did not cease their use. (*See* Andrew Decl., ECF No. 24-1, ¶ 10.) Construing the record in Plaintiff's favor, this alleged tortious activity is sufficient to establish the Court's personal jurisdiction over Defendants.

## B. Due Process

Given that the Court can exercise personal jurisdiction over Defendants under Ohio's long-arm statute, the Court must now determine whether exercising personal jurisdiction over the Defendants comports with constitutional due process requirements. Courts in the Sixth Circuit make this determination using the three-part test set forth in *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Southern Machine Co.*, 401 F.2d at 381. "Second, the cause of action must arise from the defendant's activities there." *Id.* And third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

### 1. Purposeful Availment

The purposeful availment requirement provides some degree of predictability to out-of-

13

state residents so that they can structure their conduct with some assurance as to where their conduct will and will not render them liable to suit. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This requirement protects out-of-state residents from being haled into a jurisdiction based only upon "'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citations omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *Worldwide Volkswagen Corp.*, 44 U.S. at 299). Accordingly, "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between [itself] and residents of the forum, [it] manifestly has availed [itself] of the privilege of conducting business there." *Id.* at 475–76 (internal citations omitted) (quoting *Keeton*, 465 U.S. at 781; *Travelers Health Ass'n v. Virginia (ex rel State Corp. Comm'n)*, 339 U.S. 643, 648 (1950)). The Ohio long-arm statute's "'transacting any business' standard is coextensive with the purposeful availment prong of constitutional analysis." *Burnshire Dev., LLC v. Cliff's Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006).

RSS has alleged that Defendants have transacted business within the meaning of the Ohio long-arm statute, and have thus also purposefully availed themselves of the privilege of acting in Ohio. RSS alleges that Defendant Bauer misappropriated the trade secrets of an Ohio company, and used them. (Compl. ¶ 31, ECF No. 1.) RSS asserts that, while MCCOA (NV) was active, Bauer advertised for a dealer whose territory encompassed parts of Ohio. Bauer states that he advertised for the dealer, Mr. Smith, and put him in contact with Kathleen Bauer, his mother, when she established MCCOA (VA).[5] Mr. Smith continues to own and manage two Mattress

---

[5] Plaintiff alleges that MCCOA (VA) is a successor-in-interest to MCCOA (NV), and that MCCOA (VA) continued the prior business activities of its predecessor, personnel remained

14

Clearance Centers of America locations in Indiana. (*Order*, ECF No. 26.) Mr. Smith stipulated that he advertises to customers in Ohio, and his sales to Ohio customers comprise 10% to 30% of his total sales. (*Id.*) The record shows that MCCOA (VA) had a contracted with a company in Ohio that sells bedframes, that MCCOA (VA) had an Ohio dealer, has Mr. Smith, an Indiana dealer who maintains two locations with exclusive territory in Ohio, and has a Pennsylvania dealer who maintains a location with exclusive territory in Ohio. (Responses to Interrogatories: ECF No. 24-3, Ex. 3, Nos. 3-5; Territory Agreement for Ohio Dealer, ECF No. 24-4, Ex. 4; Map of Territories, ECF No. 24-5, Ex. 5; Smith Decl., Ex. 6 at ¶¶ 3-4, ECF No. 24-6.)

On the other hand, Defendants assert that "Defendants are not even the manufacturers of the products in question, they are merely resellers. Defendants have not purposefully directed any activity into Ohio or manifested any intent to engage in business in Ohio." (Def.'s Mot., ECF No. 15-1, at p. 9.) However, in considering a 12(b)(2) motion, the court is not required to "weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459. The plaintiff need only make a prima facie showing that personal jurisdiction exists. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Shaker Constr. Grp. LLC, v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *1 (S.D. Ohio Sept. 18, 2008). Plaintiff here has alleged sufficient facts showing that defendants have purposefully availed themselves of the privilege of acting in Ohio.

### 2. Connection to the Causes of Action

Under the second *Southern Machine* requirement, a plaintiff's "cause of action must arise

---

consistent throughout the transfer, and it held itself out to the general public and its own dealers as the same business as MCCOA (NV). (Compl. ¶ 48, ECF No. 1.) Plaintiff alleges the transfer of assets from Bauer to Kathleen Bauer, Bauer's mother, was an "attempt to shield Bauer from liability and/or continue operations while Bauer was incarcerated." (*Id.*) Plaintiff further alleges that MCCOA (VA), "by and through Bauer and as the successor-in-interest to [MCCOA (NV)] continues to use RSS's trade secrets." (*Id.* at ¶ 49.)

15

from the defendant's activities there." *Southern Machine Co.*, 401 F.2d at 381. However, as the Sixth Circuit explained in *Southern Machine*, "the second criterion does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, *have a substantial connection with* the defendant's in-state activities.'" *Third Nat'l Bank v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *Southern Machine Co.*, 401 F.2d at 384 n.27). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Southern Machine Co.*, 401 F.2d at 384 n.29.

Here, the cause of action against Defendants is sufficiently connected to their in-state activities. RSS alleges that Bauer's former business associate stole trade secret information from PMD while in Ohio and used the information to form a competing company. (Compl. ¶ 21; ECF No. 1.) Plaintiff alleges that Bauer (and his mother, Kathleen Bauer, as successor-in-interest) is the sole owner of the competing businesses (after various changes in name and formation) and continues to improperly use plaintiff's trade secrets to conduct its business, including business in Ohio. For instance, RSS alleges that "Bauer has followed the same path taken by Conrad, in that he has used corporate shell games to establish multiple entities around the country using RSS's trade secrets. Specifically, Defendants (through Bauer) have ... recruited approximately 35 dealers all around the country, at least one of which is in Ohio, to market and sell mattresses and related products using RSS's trade secrets." (Compl. ¶¶ 30-31, ECF No. 1.) As Plaintiff has alleged that Defendants have developed and trained their business contacts in Ohio, and those doing business in Ohio, by allegedly using those methods, the matter at issue is sufficiently connected to Defendants' in-state activities. The second *Southern Machine* requirement is

16

satisfied.

### 3. Reasonableness

A defendant's actions, or the consequences caused by a defendant's actions, "must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co.*, 401 F.2d at 381. This final criterion of the *Southern Machine* test "looks to the extent of the forum state's interest and whether exertion of jurisdiction over the particular defendant is fair." *First Nat'l Bank v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982). "When the first two elements [of the *Southern Machine* test] are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *Id.* When considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, courts typically consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

The four factors outlined above demonstrate that the court's exercise of personal jurisdiction over Defendants is reasonable. Defendants Bauer and Kathleen Bauer of MCCOA (VA) are citizens of Virginia, MCCOA (VA) is a Virginia limited liability company operating in several states, and MCCOA (NV) is a now-defunct limited liability Nevada corporation. Although Defendants would be burdened by defending a lawsuit in Ohio, the Sixth Circuit has "deemed specific jurisdiction to be proper even when a defendant would be compelled to travel." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005). Ohio has a strong interest in safeguarding RSS's legal options over the misappropriation of an Ohio corporation's trade secrets given that the trade secrets were allegedly developed and stolen in Ohio, were

17

misappropriated by Bauer, and continue to be misappropriated in Ohio. RSS has a substantial interest in obtaining relief for the purported misappropriation of its trade secrets. Exercising personal jurisdiction over Defendants comports with constitutional due process requirements.

### III.

Defendants move, in the alternative, for this Court to transfer venue to the United States District Court for the Western District of Virginia. (Def.'s Mot., ECF No. 15-1, p. 13.) On the other hand, RSS contends that that venue is proper in this Court under U.S.C. § 1391(a)(2), which provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," and also under U.S.C. § 1404(a), which evaluates the convenience of the parties and various public-interest considerations. Venue is proper in "any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). Venue may be proper in two or more districts. The test is not "whether this district is the 'best' venue, but whether the district has a 'substantial' connection to the plaintiff's claims, even if other districts have greater contacts." *Int'l Paper Co. v. Goldschmidt*, 872 F. Supp. 2d 624, 633 (S.D. Ohio 2012). "The Defendants are not guaranteed a preferred venue, only a proper venue." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 767-68 (S.D. Ohio 2014) (internal quotation omitted). "If the plaintiff presents a prima facie case that venue is proper, after reading the pleadings and affidavits in the light most favorable to the plaintiff, the defendant's motion will be denied." *Pearle Vision, Inc. v. N.J. Eyes, Inc.*, Case No. 1:08-cv-190, 2009 WL 73727, *4 (S.D. Ohio, Jan. 6, 2009) (quotation omitted).

As Judge Urbanski noted in his Memorandum Opinion,

> "[a]s to the convenience of the parties, the court believes that an Ohio forum would be more convenient for RSS, an Ohio corporation, while a Virginia forum would be more convenient for [MCCOA (VA)], a Virginia LLC. Neither the Ohio action nor this action has reached an advanced stage, and the actions

18

substantially overlap. The court recognizes, however, that RSS appears to be the "natural plaintiff" because RSS alleges that MCCOA has already violated a duty owed to RSS; namely, by misappropriating RSS' trade secrets. *See Fed. Home Loan Mortg. Corp. v. Mortg. Guar. Ins. Corp.,* No. 1:12-CV-539-AJT-JFA, 2012 WL 2673151, at *5 (E.D. Va. July 5, 2012) (internal quotation marks omitted). Accordingly, the court concludes that the balance of convenience does not weigh in favor of this forum. The court will therefore decline to exercise its declaratory judgment jurisdiction in this case.

(*Opinion*, ECF No. 33-1, p. 7).

This Court agrees with Judge Urbanski's finding that the balance of convenience weighs in favor of this forum. Having read the pleadings and the record in the record in the light most favorable to the plaintiff, the Court finds that Plaintiff has presented a *prima facie* case that venue is proper in this Court. Accordingly, Defendants' motion to transfer venue is denied.

## IV.

For the reasons stated above, Defendants' Motions to Dismiss for lack of personal jurisdiction, or in the alternative, for change of venue (ECF Nos. 15, 29) are **DENIED.**

**IT IS SO ORDERED.**

8-2-2018
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**